## IN RE ESTATE OF MAY COOKE.
### ARNOLD L. SIDMORE v. CLAUDE H. ALLEN AND OTHERS.[1]

May 10, 1940.

No. 32,284.

*Kyle & Kyle* and *Claude H. Allen,* for appellants.
*Kennedy & Kennedy,* for respondent.

LORING, JUSTICE.

This case, like that of Kalscheuer v. the same estate, 207 Minn. 437, 292 N. W. 96, No. 32,283, arose out of a claim for services rendered by Sidmore to May Cooke and her husband during the last six years of her life. The claim was for $5,400 and was wholly disallowed by the probate court. On appeal to the district court the case was tried to the jury, resulting in a verdict for $1,600 in favor of the claimant. The case comes here upon an

[1]Reported in 292 N. W. 95.

appeal by the executor and residuary legatees from an order deny-
ing their motion for a new trial. The appellants claim that the
verdict is excessive and not justified by the evidence and that the
court erred in its charge to the jury.

Reference is made to the opinion in the Kalscheuer case for the
general facts relative to the Cooke estate. It seems that Sidmore,
while a young man, lived as a member of the Cooke family until
January 1, 1930, when he was married. While he so lived in the
family he paid no board but performed some minor services around
the house. Evidently he was treated as one of the family. In
September of 1930 the Cookes bought a house and lot on Merrill
avenue in St. Paul which they immediately sold to the Sidmores
for $1,250 on a contract for deed calling for monthly payments
of $15. At the time of Mrs. Cooke's death there was a balance
due on the contract of $475.

Sidmore claims that between September 9, 1931, and September
9, 1937, he performed various services for the Cookes, driving
their car for them on shopping trips and occasionally to their
former home in South Dakota. He did some odd jobs around
the house. On two occasions he and his wife moved into the
Cooke home for a period of about eight weeks and took care of
Mrs. Cooke while she was sick. For these services he asked $75
per month for the six-year period. He offers as evidence declara-
tions by both the Cookes that they intended to compensate for
what he had done. Kalscheuer testified that the Cookes had told
him that for what Sidmore had done they intended to leave him
the house and household goods at 1015 Van Slyke avenue and to
cancel whatever balance was due on the contract for deed. This
was to be in payment for what he had done. Mrs. Sidmore testi-
fied that Mrs. Cooke said that certain stock was to go to the Sid-
mores, when she was through with it, in compensation for their
services. On another occasion Mrs. Cooke said: "We are not
going to pay you now for what you have done for us, but when
we are through with it you are going to be well paid." And again
the remark was made: "For what the Sidmores had done for
them." During his lifetime Mr. Cooke made the statement that

their estate would go to the survivor, and at the time of the death of the survivor he (referring to Sidmore) would be well paid for all that he had done for them. Mrs. Cooke bequeathed to Arnold Sidmore the property which they had theretofore sold to him under contract for deed, also providing that he should make no further payments under the contract. She also bequeathed him $1,000. In commenting upon the bequest in her will she said: "Arnold Sidmore lived with my husband and myself for a period of over ten years and performed many valuable and useful services for us without compensation."

1. We think the evidence in this record is conclusive that the parties agreed that Sidmore's services were to be compensated for by a testamentary disposition and that therefore, under the rules laid down in the Kalscheuer case, the estate was entitled as a matter of law to a credit on the claim made by Sidmore of the amount of the legacy. The trial court should have so charged the jury.

2. It is also quite clear on this record that no verdict could be sustained in excess of the legacy.

The appellants' motion in the trial court was for a new trial. The order denying it must be reversed.

Reversed.

STONE, JUSTICE (concurring).

I concur in the result.

PETERSON, JUSTICE (dissenting).

The same fact and legal issues are presented in this as in the Kalscheuer case, 207 Minn. 437, 292 N. W. 96. The only difference which I can see is that the services were of a different kind. The evidence presented a fact issue and sustains the verdict. Decision here is in my judgment controlled by the views which I expressed in my dissent in the Kalscheuer case. Hence I think that there should be an affirmance here also.

MR. CHIEF JUSTICE GALLAGHER, being engaged on the pardon board when this case was argued, took no part in the consideration or decision of the case.